T.C. Memo. 1996-463


UNITED STATES TAX COURT


KIRK A. AND IDA R. CRANDALL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8220-94.                    Filed October 15, 1996.


Kirk A. and Ida R. Crandall, pro sese.

<u>Yolanda R. Garcia</u> and <u>Franklin R. Hise</u>, for respondent.


MEMORANDUM OPINION


WOLFE, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.  All section references are to the Internal Revenue Code in
effect for the taxable year in issue, unless otherwise indicated.

All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $999. The sole issue for decision is whether payments received by petitioner Kirk A. Crandall in 1991 from the Kodak Welfare Benefit Plan Trust are includable as gross income on petitioners' 1991 Federal income tax return.

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioners resided in Datil, New Mexico, when their petition was filed.

On September 1, 1985, petitioner Kirk A. Crandall (Mr. Crandall) began employment with the Eastman Kodak Company (Kodak) as a service representative. Approximately 13 months later Mr. Crandall became disabled. The last date on which he worked at Kodak was October 17, 1986. In March 1987, Mr. Crandall filed an application for benefits under the Kodak Long Term Disability (LTD) Plan (sometimes hereinafter referred to as "the Plan"). His coverage under the Plan became effective March 31, 1987. A subsequent, lump sum settlement of a disputed worker's compensation claim filed by Mr. Crandall did not adversely affect his eligibility for benefits under the Plan.

During 1991, Mr. Crandall received payments from the Kodak Welfare Benefit Trust in the amount of $5,491.52. Petitioners

did not include that amount in income on their joint 1991 Federal income tax return. Mr. Crandall's 1991 Form W-2, Wage and Tax Statement, issued by the Kodak Welfare Benefit Trust, reported the amount of $5,491.52 in separate boxes, alternatively entitled "Wages, tips, other compensation" and "Disability Benefits (Sick Pay) Included in Wages", and also in the box for "Total Benefits Paid". Nothing was withheld or excluded from Mr. Crandall's 1991 benefits. On their 1991 return, Mr. Crandall reported as his occupation "Disabled", and petitioner Ida Crandall reported as her occupation "Teacher".

Petitioners contend that the payments they received in 1991 from the Kodak Welfare Benefit Trust are excludable from gross income because the total amount received was not attributable to employer contributions that were not includable in petitioners' gross income.

Respondent determined that the payments Mr. Crandall received must be included in petitioners' 1991 gross income because the Kodak Long Term Disability Plan was funded solely by employer contributions. Respondent's determinations as to petitioners' tax liability are presumed correct, and petitioners have the burden of proving otherwise. Rule 142(a).

Section 105 provides that, in general, amounts received by an employee, through an accident or health plan for employees, for personal injuries or sickness must be included in gross income to the extent such amounts (1) are attributable to

contributions by the employer that were not includable in the gross income of the employee, or (2) are paid by the employer. Sec. 105(a), (e).

Documents stipulated by the parties in this case establish that the payments received by Mr. Crandall from the Kodak Welfare Benefit Trust were made under the Kodak Long Term Disability (LTD) Plan, and that Kodak funded the Kodak Welfare Benefit Trust without any contributions from employees.

The parties stipulated into the record a copy of select portions of an undated employee handbook (hereinafter "the employee handbook"), in addition to a copy of applicable portions of an undated booklet issued by Kodak that explained the Kodak LTD Plan (sometimes hereinafter referred to as "Kodak's Long Term Disability booklet" or "the booklet"). The copied material had been provided to respondent in 1995 by Nick Laino, a manager in the Disability Management Services unit of the Metropolitan Life Insurance Company (MetLife). At the time, MetLife was responsible for reviewing claims under the Plan and assisting Kodak in general planning.

The employee handbook states: "The plan is known as the Kodak Long Term Disability (LTD) Plan and is sponsored and maintained on an uninsured basis by Eastman Kodak Company". It states further:

> The Kodak Welfare Benefit Plan Trust with Citibank, N.A., as trustee, has been established to accumulate assets of the plan and to provide funds for benefit

payments. The assets of the fund held by the trustee may not be used for any purpose other than for the exclusive benefit of persons entitled to benefits under the plan * * *.

The booklet states that the Kodak "LTD Plan is paid for entirely by the company. There is no cost to employees." From the record in this case, we conclude that the payments received by Mr. Crandall during 1991 from the Kodak Welfare Benefit Trust were benefits under the Kodak LTD Plan, and that such payments were attributable exclusively to contributions by Kodak.

In support of their contention that the payments at issue were not attributable to employer contributions, petitioners submitted into the record a copy of a Summary Annual Report issued by Kodak for 1991. With respect to the Kodak LTD Plan, the Summary Annual Report states that "During the plan year, the plan had total income of $13,853,115 including employer contributions of $927,838 and realized net investment gains of $12,925,277." Petitioners conclude from this statement that 93.31 percent of the Plan income was from employee contributions or assets. We disagree with petitioners' interpretation. The quoted statement does not classify the $12,925,277 as employee contributions or assets, but defines that amount as "realized net investment gains". Moreover, petitioners' interpretation is inconsistent with the statement in Kodak's Long Term Disability booklet stating that the "Plan is paid for entirely by the company. There is no cost to employees."

Petitioners also maintain that Mr. Crandall's payroll stubs from Kodak evidence employee contributions to the Plan. Copies of a sampling of Mr. Crandall's payroll stubs issued by Kodak during his period of active employment show that 60 cents was deducted from his weekly earnings for "Disability." However, the employee handbook indicates that the weekly deductions of 60 cents from Mr. Crandall's earnings were for Kodak's short-term Sickness Allowance Plan, not the Kodak LTD Plan. According to the employee handbook, the Kodak Sickness Allowance Plan (KSAP) is a short-term benefits plan covering all employees. For employees with less than 15 years of service, such as Mr. Crandall, the KSAP provides continuation of an employee's full base pay for a period of 26 weeks while the employee is unable to work because of sickness, injury, or disability.[1] The employee handbook states that "Kodak pays for the cost of the plan [KSAP], however, during [an employee's] first three years of coverage, [the employee] contribute[s] 60 cents per week through payroll deduction." The corporate documents available to us demonstrate that the 60-cent payroll deductions that Mr. Crandall incurred, until he became disabled in October 1986, were for the short term coverage. Stipulated correspondence demonstrates that such was the administrative construction of the plan.

---

[1] Mr. Crandall's long term disability benefits began approximately 23 weeks after the last date he worked at Kodak. (Oct. 17, 1986 to Mar. 31, 1987 = 165 days or 23.57 weeks).

We hold the following circumstances dispositive. During 1991, Mr. Crandall received payments from the Kodak Welfare Benefit Trust totaling $5,491.52. Payments from the Kodak Welfare Benefit Trust are made exclusively to satisfy obligations under the Kodak LTD Plan. Kodak's Long Term Disability booklet states that the Plan is paid for entirely by Kodak and that there is no cost to employees. The deductions of 60 cents from Mr. Crandall's weekly earnings were for Kodak's Sickness Allowance Plan, not the Kodak LTD Plan. Petitioners did not argue, nor does the record show, that Kodak's contributions to the Plan were included in Mr. Crandall's gross income, or that the payments he received qualify under the exception provided for under section 105(c).[2]

Under the circumstances of this case, sections 61 and 105 clearly require petitioners to include in income for Federal income tax purposes the disability payments that Mr. Crandall received during 1991.

<u>Decision will be entered for respondent</u>.

---

[2] Both the employee handbook and the booklet state that payments under the Plan are calculated as a percentage of the employee's base wage or annual salary rate, less certain other benefits.